IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00722-MEH

MARK L. BOYD,

     Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,

     Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiff Mark Lester Boyd appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability and disability insurance benefits ("DIB"), filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Jurisdiction is proper under 42 U.S.C. § 405(g). The parties have not requested oral argument, and the Court finds it would not materially assist the Court in its determination of this appeal. After consideration of the parties' briefs and the administrative record, the Court reverses the ALJ's decision and remands the matter to the Commissioner for further consideration.

## BACKGROUND

### I.    Procedural History

Plaintiff seeks judicial review of the Commissioner's decision denying his application for DIB filed on March 14, 2014. [Administrative Record ("AR") 52, 66] After the application was

denied on July 31, 2014 [AR 66-68], an Administrative Law Judge ("ALJ") scheduled a hearing at the Plaintiff's request for January 27, 2016 [AR 98-123], at which Plaintiff was represented by counsel, and the Plaintiff and a vocational expert testified. [AR 36-50] The ALJ issued a written ruling on February, 11 2016 finding Plaintiff was not disabled starting on August 8, 2013 through February 11, 2016 because Plaintiff's impairments and residual functional capacity did not prevent him from performing his past relevant work as an automobile mechanic. [AR 21-35] On January 24, 2017, the SSA Appeals Council denied Plaintiff's administrative request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review [AR 1-6]. *See* 20 C.F.R. § 404.981. Plaintiff timely filed his complaint with this Court seeking review of the Commissioner's final decision.

## II.    Plaintiff's Alleged Conditions

Plaintiff was born on February 10, 1956; he was 58 years old when he filed his application for DIB on March 14, 2014. [AR 52] Plaintiff claims he became disabled on August 8, 2013 [AR 131] and reported that he was limited in his ability to work due to chronic back pain, gouty arthritis, osteoarthritis, and degenerative disc disease. [AR 41, 230] Plaintiff completed a "Function Report" in tandem with his application, in which he explained that once every couple of months his "conditions have made it impossible to work" because "[he] is bed-ridden and can't stand or walk without using crutches" or "can't use his hands to pick anything up." [AR 181] He also stated that he had difficulty sleeping and putting on pants due to pain; he could prepare easy meals, mow the lawn, and wash the car; and "can't walk more than 100ft without pain." [182-186]

The record dates back to October 2012, at which time Plaintiff was treated by Gregory

Jaramillo, M.D. for gouty arthritis.  [AR 249]  Plaintiff reported he had gout flares every three months, which generally affected his knees and wrist, he had wrist surgery five years previously following a bad wrist flare, and his medications had worked well. [AR 249] Dr. Jaramillo prescribed Plaintiff medication for gouty pain and inflammation.  [AR 250]  On December 17, 2013, Plaintiff saw Dr. Jaramillo because of gout pain in his right hand and right foot, unintentional weight loss, and bowel irregularities.  [AR 246]  Plaintiff followed up with Dr. Jaramillo on March 3 and 5, 2014 for symptoms related to arthritis and a leg infection resulting from a lesion sustained at work.  [AR 280-282]  Dr. Jaramillo noted that the infection improved after antibiotic treatment.  [AR 280-282]

On March 8, 2014, Plaintiff presented to the emergency department at Longmont United Hospital complaining that he had bilateral knee pain from his recurrent gout, he was unable to walk with crutches, and he ran out of his indomethacin (medication for inflammation and pain), which Plaintiff said seemed to work well. [AR 257, 259] The attending physician, Herbert Ogden, M.D., found both of Plaintiff's knees were slightly swollen with decreased range of motion, and the symptoms were consistent with an acute flare of Plaintiff's known gouty arthritis. [AR 258] According to Dr. Ogden, Plaintiff felt better after receiving medication, he was able to ambulate with crutches, and there was no indication of septic joint, occult fracture, or compartment syndrome. [AR 258] While at a followup visit later that month for his leg ulcer, Plaintiff asked Dr. Jaramillo to complete a functional residual capacity form for purposes of securing disability benefits. [AR 244]. Thereafter, on July 3, 2014, Plaintiff reported gout and arthritic pain complaints to Jonathan Manto, PA-C, who performed a knee joint aspiration to relieve the pain.  [AR 273-274]

On July 28, 2014, Plaintiff presented to John Mars, M.D. for a physical consultative

examination. [AR 264] Plaintiff reported he had been diagnosed with gout ten years previously; the gout attacks occurred every two to three months and usually affected his knees, sometimes affected his elbows and wrists, and were severely painful; he had gout flares while on medication (allopurinol specifically); he had a lumbar discectomy approximately ten years previously; he suffered from osteoarthritis which affected his hands and lower back; and, he was able to dress, bathe, cook, shop, and walk three to four blocks at a time without resting. [AR 264] After a thorough physical examination, Dr. Mars diagnosed Plaintiff with a history of gout and osteoarthritis, and found Plaintiff should avoid ladders and scaffolds due to the osteoarthritis, but he could stand, walk, climb stairs, and sit without limitations; could handle objects and use his feet for foot controls; could kneel, balance, stoop, crawl and crouch; and could lift and carry forty pounds occasionally and thirty pounds frequently, limited by his osteoarthritis. [AR 266] That same day, x-rays of Plaintiff's knees revealed "[i]nferior patellar spurring" and probable joint effusion in his left knee, and "minimal superior patellar spurring" in his right knee. [AR 267]

On July 31, 2014, a Medical Consultant for the SSA, K. Terry, M.D., completed a physical residual functioning capacity (RFC) assessment for Plaintiff finding that Plaintiff could occasionally lift and/or carry fifty pounds and frequently lift and/or carry twenty-five pounds; sit, stand, and/or walk for six hours of an eight-hour workday; had postural and manipulative limitations; had no communicative or visual limitations; and was to avoid concentrated exposure to extreme heat, wetness, humidity, and machine hazards. [AR 59-61]

In August 2014, Plaintiff reported to P.A. Manto that his knee had "greatly approved" since the aspiration procedure, but he had "some lower back and mid back pain for the past 6 months" and

"left foot pain when he walks as well." [AR 270] Plaintiff visited the Longmont Emergency Department on August 28, 2014 after falling and was diagnosed with a fractured left clavicle and left little finger. [AR 301-307] In September 2014, Plaintiff saw Gerald Rupp, M.D. for post fracture evaluation and reported mild pain, swelling, stiffness, muscle cramps, and muscle weakness. [AR 338] Dr. Rupp found swelling and decreased range of motion in Plaintiff's left shoulder. [AR 339] Thereafter, Plaintiff received treatment at the Longmont Clinic from Curtis Leonard, M.D. [AR 310-312, 333-337] Dr. Leonard noted a mid-shaft clavicle deformity; localized swelling; movement was painful; and, believed Plaintiff may be working too hard at work. [AR 336] Regarding Plaintiff's spine, Dr. Leonard reported no deformities; no pain and full range of motion; and normal strength. [AR 336] A diagnostic imaging report of Plaintiff's spine, however, revealed significant foraminal stenosis, mild to moderate canal stenosis at C5-6 and C6-7, and mild right foraminal stenosis at C3-4. [AR 309]

In October 2014, Plaintiff reported decreased pain in his clavicle and finger, but increasing pain in his left shoulder, which Dr. Leonard suspected was the result of a rotator cuff tear. [AR 313-314] Dr. Leonard ordered a magnetic resonance imaging (MRI) scan of Plaintiff's left shoulder, which showed a partial tear of the rotator cuff and degenerative change of the anterior superior labrum. [AR 314, 320-21]

On Dr. Leonard's recommendation, Plaintiff presented to Robert Fitzgibbons, M.D. on November 10, 2014 for treatment of his left shoulder. [AR 326-327] Plaintiff reported moderate left shoulder pain, aggravated by movement or lifting, and decreased range of motion in his left shoulder. [AR 326] Dr. Fitzgibbons's findings indicated painful shoulder movement and decreased results in

shoulder resisted strength testing, but no sign of pain or decreased range of motion in Plaintiff's spine. [AR 327] In January 2015, Dr. Fitzgibbons reported Plaintiff's shoulder abduction was restricted and painful; forward flexion and internal rotation did not cause pain; full strength in both shoulders; and unremarkable findings related to Plaintiff's spine. [AR 325] Dr. Fitzgibbons also noted that during Plaintiff's next visit, he would evaluate whether Plaintiff had full range of motion in his left shoulder. [AR 325]

### III. Hearing Testimony

At a hearing on January 27, 2016, Plaintiff (who appeared with counsel) and a vocational expert, Ashley Briars, testified. [AR 36-50] Plaintiff testified that until two and a half years ago he had always worked as an automobile mechanic at repair shops; he stopped working because he "couldn't do it anymore"; he was not supposed to lift more than ten pounds because of degenerative disc disease; he had to lie down for an extended period of time after lifting more than ten pounds; he had back surgery in the nineties and the doctor told him not lift more than fifteen pounds; he worked for another fifteen to twenty years after his back surgery; he could sit for forty-five minutes, stand for fifteen minutes, and walk between half and three quarters of a block; he did exercises at home; he lived with his wife in a house; he mowed the lawn, washed the car, shoveled snow, and cleaned the garage; he could lift his left arm to shoulder level, but not higher; he was suffering pain in his neck, between his shoulder blades, and in his back from pinched nerves; he could sleep only two hours at a time before the back pain awakened him; his collar bone had healed; and, he had a pretty high pain tolerance because he was a mechanic. [AR 39-46]

The ALJ then turned to the vocational expert, Ms. Briars, who testified that Plaintiff acquired

skills in his past work that transfer to one occupation at the light level, but not any occupations at the sedentary level. [AR 47] The only occupation Plaintiff's acquired skills would transfer to at the light level was a tune-up mechanic, which Ms. Briars described as "a very small portion of what [Plaintiff] was doing as an auto mechanic with regards to tuning up vehicle engines to ensure efficient operation." [AR 47-48] Specifically, Plaintiff's knowledge and skills in making adjustments; cleaning certain parts; making cars run efficiently; and using tools such as a fuel analyzer, vacuum gauge, and tachometer were transferrable to a tune-up mechanic. [AR 48] At the conclusion of Ms. Briars testimony, Plaintiff's counsel asked the ALJ if he could ask Ms. Briars whether Plaintiff can lean over an engine wall all day and tune up a car. [AR 48] Both Ms. Briars and the ALJ declined the request; and the ALJ informed Plaintiff's counsel that Ms. Briars could not testify to Plaintiff's physical capabilities. [AR 48]

During closing remarks, Plaintiff informed the ALJ that he had been performing tune ups since he was twelve years old, bending over the grill and fenders caused him pain, and he owned over one hundred thousand dollars worth of tools, but had not used any of the tools in his garage during the last three years. [AR 49]

The ALJ issued an unfavorable decision on February 11, 2016. [AR 21-35]

## LEGAL STANDARDS

To qualify for benefits under sections 216(i) and 223 of the SSA, an individual must meet the insured status requirements of these sections, be under age 65, file an application for DIB and/or SSI for a period of disability, and be "disabled" as defined by the SSA. 42 U.S.C. §§ 416(i), 423, 1382.

## I. SSA's Five-Step Process for Determining Disability

Here, the Court will review the ALJ's application of the five-step sequential evaluation process used to determine whether an adult claimant is "disabled" under Title II of the Social Security Act, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Step One determines whether the claimant is presently engaged in substantial gainful activity. If he is, disability benefits are denied. *See* 20 C.F.R. § 404.1520. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. § 404.1520(c). If the claimant is unable to show that his impairment(s) would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. *Id.* Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 404.1520(d). If the impairment is not listed, he is not presumed to be conclusively disabled. Step Four then requires the claimant to show that his impairment(s) and assessed residual functional capacity ("RFC") prevent him from performing work that he has performed in the past. If the claimant is able to perform his previous work, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(e), (f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps as discussed, the analysis proceeds to Step Five where the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view

of his age, education, and work experience. *See* 20 C.F.R. § 404.1520(g).

## II.    Standard of Review

This Court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *see also White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). Thus, the function of the Court's review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970); *see also Bradley v. Califano*, 573 F.2d 28, 31 (10th Cir. 1978).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . . However, [a] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citations omitted). In addition, reversal may be appropriate when the ALJ either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *Id.* (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)). But, in all cases, the Court may not re-weigh the evidence nor substitute its judgment for that of the ALJ. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

## ALJ's RULING

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity since the onset

date of his disability, August 8, 2013 (Step One). [AR 27] Further, the ALJ determined that Plaintiff had the following severe impairments: gout, osteoarthritis affecting the neck and knees, post left finger fracture, and post left clavicular fracture (Step Two). [*Id.*] He found Plaintiff's hearing loss was not a "severe" medically determinable impairment because it appeared this could be corrected with the use of hearing aids. [*Id.*] Next, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 27-28]

The ALJ then concluded that the Plaintiff had the RFC "to perform the full range of medium work as defined in 20 CFR 404.1567(c)." [AR 28] In considering the entire case record, the ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"; but Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely credible." [AR 29] The ALJ determined Plaintiff's statements were not entirely credible based on the objective medical findings: the flares of gout in Plaintiff's knees and wrist improved with medication; the left finger fracture, clavicle fracture, and partial tear in Plaintiff's left rotator cuff had not required surgery or ongoing, significant medical treatment; the spinal degeneration and stenosis had not required surgery or significant medical treatment; in January 2015, Plaintiff had full strength in his left upper extremity and only a temporary restriction in range of motion; after January 2015, there was no further evidence of medical treatment for any of Plaintiff's alleged disabling impairments; and, there is "no support for any appreciable postural or manipulative limitations." [AR 30]

The ALJ found that, considering Plaintiff's RFC and the physical demands of the job, Plaintiff

was able to perform past relevant work as an automobile mechanic (Step Four). [AR 30] As a result, the ALJ concluded that Plaintiff was not disabled at Step Four of the sequential process and, therefore, was not under a disability as defined by the SSA. [AR 30-31]

Plaintiff sought review of the ALJ's decision by the Appeals Council on April 11, 2016. [AR 17] On January 24, 2017, the Appeals Council notified Plaintiff that it had determined it had "no reason" under the rules to review the decision and, thus, the ALJ's decision "is the final decision of the Commissioner of Social Security." [AR 1-6] Plaintiff timely filed his Complaint in this matter on March 21, 2017.

## ISSUES ON APPEAL

On appeal, Plaintiff alleges the following errors: (1) the ALJ failed to sufficiently develop the record by not making reasonable inquiry to obtain known evidence, despite the presence of counsel; (2) the ALJ erred by failing to properly consider Plaintiff's back pain and conduct a proper pain analysis as part of the residual functioning capacity determination; and (3) the ALJ erred by rejecting the opinion of a treating physician and failing to properly weigh the physician opinions.[1]

_____

[1]For the purpose of judicial efficiency, the Court has combined Plaintiff's issues on appeal. In his Opening Brief, Plaintiff presented the following "assignments of error":

    a. The ALJ erred by not making reasonable inquiry to obtain known material evidence prior to issuing his decision, despite the presence of counsel.
    b. The ALJ failed to conduct a proper pain analysis.
    c. The ALJ erred in failing to properly consider the Claimant's nonexertional impairments of back pain and the effects on his RFC.
    d. The ALJ erred in failing to accord "controlling weight" to the opinion of the treating physician.
    e. The ALJ erred in rejecting the treating physician's opinion without making appropriate findings.
    f. The ALJ failed to properly analyze whether the claimant's financial status

<u>**ANALYSIS**</u>

The Court will address each of the Plaintiff's issues in turn.

**I.        Whether the ALJ Failed to Sufficiently Develop the Record**

Plaintiff argues that the ALJ failed to make reasonable inquiry to acquire medical records from the surgeon who performed Plaintiff's back surgery in 1995 and the RFC questionnaire, which was never completed by one of Plaintiff's treating physicians.

"In a social security disability case, the claimant bears the burden to prove her disability." *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)).  But because "administrative disability hearings are nonadversarial . . . the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Id.* at 1062-63.  The ALJ's "duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts." *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993)). "The standard for determining whether the ALJ fully developed the record 'is one of reasonable good judgment.'" *Segura v. Barnhart*, 148 F. App'x 707, 710 (10th Cir. 2005) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997)).  If there is sufficient information to make a disability determination, the record is sufficiently developed. *Cowan*, 552 F.3d at 1187; 20 C.F.R. § 404.1520b.

If a party does not identify the specific evidence the ALJ should have developed, such

_____

constituted a justifiable excuse for failing to obtain or follow treatment.

Opening Br. 6.

omission ends the party's duty-to-develop argument. *See Watson v. Barnhart*, 194 F. App'x 526, 530 (10th Cir. 2006) ("Watson neither (1) suggests what the omitted treatment evidence might reveal; nor (2) identifies anything in the record that would have reasonably notified the ALJ that such evidence existed."); *Jaramillo v. Massanari*, 21 F. App'x 792, 795 (10th Cir. 2001) ("She has not identified medical providers from whom records were missing nor did she ask assistance in obtaining any records. On appeal, she has failed to identify the evidence she claims the ALJ should have obtained. The ALJ did not violate the duty to develop the record.").

"Further, the ALJ's duty pertains even if the claimant is represented by counsel." *Wall*, 561 F.3d at 1063. But, "when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Cowan*, 552 F.3d at 1188 (internal quotation marks and citation omitted). "[I]n a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Id.* "Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record . . . and later fault the ALJ for not performing a more exhaustive investigation." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008).

Here, the Plaintiff contends the ALJ failed to make reasonable efforts to acquire the RFC questionnaire from Dr. Jaramillo and the records of Plaintiff's 1995 back surgery. Opening Br. 6. The Court disagrees. When the ALJ asked Plaintiff's counsel at the administrative hearing whether "all the written documents pertaining to Mr. Boyd's disability" had been provided, Plaintiff's counsel replied in the affirmative. [AR 39] Further, Plaintiff's "counsel did not indicate or suggest to the ALJ

that any medical records were missing from the administrative record, nor did counsel ask for the ALJ's assistance in obtaining any additional medical records." *See Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). This Court "will not ordinarily reverse or remand for failure to develop the record when a claimant is represented by counsel who affirmatively submits to the ALJ that the record is complete." *Maes*, 522 F.3d at 1097. "[W]here, as here, neither counsel nor the claimant have obtained . . . for themselves the records about which they now complain," Plaintiff cannot expect the ALJ "to act as the claimant's advocate." *Id.*

In addition, the Court is not persuaded that the ALJ "breached any duty to recontact the medical providers." *See* Opening Br. 6. The case Plaintiff cites for his proposition requires the ALJ to "recontact the claimant's medical sources for additional information when the record evidence is inadequate to determine whether the claimant is disabled." *Maes*, 522 F.3d at 1097. Unlike in *Maes*, however, the ALJ did not base his determination "on this lack of evidence." *See id.* at 1098. And the record is not devoid of evidence on these issues. In determining Plaintiff's residual functioning capacity, the ALJ considered the consultative examination report of Dr. Mars, Plaintiff's treatments records from December 2013 to January 2015, and Plaintiff's subjective complaints. [AR 28-30] The ALJ's duty to develop the record "is one of inquiry and factual development. The claimant continues to bear the ultimate burden of proving that []he is disabled." *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993).

The Court finds the ALJ had no duty to further develop the record in this case.

**II.    Whether the ALJ Failed to Conduct a Proper Pain Analysis and Consider Plaintiff's Non-Exertional Impairments of Back Pain in Determining His RFC**

Plaintiff argues the ALJ's RFC determination is unlawful because the ALJ did not perform a proper pain analysis pursuant to *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), and "arbitrarily discredited" Plaintiff's testimony regarding his severe back pain.  Opening Br. 8–10.

"[I]t is well settled that administrative agencies must give reasons for their decisions." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988). "If a pain-producing impairment is demonstrated by objective medical evidence, the decision maker must . . . determine whether the impairment is one that could reasonably be expected to produce the alleged disabling pain." *Luna*, 834 F.2d at 163 (internal quotation marks omitted).  Once objective medical evidence shows that a claimant has an impairment that can reasonably be expected to produce symptoms, the ALJ is required to consider the claimant's assertions of the symptoms and decide whether to believe them. *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993).  When determining whether the claimant's assertions of the symptoms is credible, the ALJ should consider factors such as:

> levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Kepler v. Chater*, 68 F.3d 387,  391 (10th Cir. 1995).

"Credibility determinations are peculiarly the province of the finder of fact, and [the Tenth Circuit] will not upset such determination when supported by substantial evidence." *Id.* (internal quotation marks omitted). But "findings as to credibility should be closely and affirmatively linked

to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted). "An ALJ must do more than simply recite the general factors he considered without referring to any specific evidence." *Smith v. Colvin*, 625 F. App'x 896, 900 (10th Cir. 2015) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)) (internal quotations and brackets omitted). "*Kepler* does not, however, require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Id.*

Plaintiff argues that the ALJ failed to complete all of the required "steps in the *Luna* analysis" and improperly "discredited [Plaintiff's] testimony regarding the extent and severity of pain." Opening Br. 7–8. The record indicates, however, that the ALJ properly applied the Tenth Circuit's standard in evaluating the Plaintiff's subjective complaints of pain. [AR 28-30] The ALJ found the Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"; thus, completing the first part of the *Luna* analysis. [AR 29]. After determining a loose nexus existed between the Plaintiff's impairment and the alleged pain, the ALJ evaluated the credibility of the Plaintiff's assertions of the symptoms: "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." [AR 29] Therefore, the Court finds that the ALJ's decision demonstrates reliance on correct legal standards.

With respect to the Plaintiff's credibility determination, the ALJ noted Plaintiff's testimony concerning his back surgery in the 1990s; his inability to lift more than ten pounds and stand for more than ten minutes; his difficulty walking around the block and bending over to work on a car; and his ability to cook, clean, mow the lawn, and shovel snow. [AR 28-29] The ALJ found that the

allegations set forth in Plaintiff's written statements and the brief Plaintiff's counsel submitted "generally corroborates testimony received at the hearing." [AR 29] Further, the ALJ assessed the available objective medical record, State agency findings, and consultative examination report of Dr. Mars. [AR 29]

The ALJ's determination that the Plaintiff's subjective complaints "are not fully persuasive concerning the extent of his functional limitations" is supported by substantial evidence. *See* [AR 29-30] The ALJ provided several reasons for his conclusion that Plaintiff's subjective pain testimony was not entirely credible: Plaintiff reported that his symptoms of gout responded well to medication and significantly improved with medication; there were several gaps in Plaintiff's medical treatment; in January 2015, Plaintiff had pain in his shoulder range of motion testing, "but full strength and no indication for any ongoing or permanent work restrictions"; and after January 2015, Plaintiff's alleged disabling medical complaints had not required surgery or ongoing medical treatment. [AR 29-30] The ALJ also considered that "[i]n October 2014, an MRI of the claimant's cervical spine was conducted and showed degeneration and some stenosis at the C5-6 and C6-7 levels"; but the ALJ determined this condition "ha[d] not required surgery or significant medical treatment." [AR 29]

Plaintiff argues that his lack of ongoing treatment "cannot be considered a good reason for discrediting" his testimony because he submitted records to the Appeals Council following the ALJ's ruling that "show continuity of treatment." Resp. Br. 4. But Plaintiff does not expressly challenge the fact that the Appeals Council considered these records and chose not to review the case. Further, the Council did not find the records to be "new and material evidence" sufficient to provide the

grounds for review.[2]  [AR 1, 6] And when the Appeals Council accepts and considers new, material evidence, it need not discuss the reasons why the evidence failed to provide a basis for changing the ALJ's decision.  *Hackett v. Barnhart*, 395 F.3d 1168, 1172–73 (10th Cir. 2005).

Plaintiff's additional claims that the ALJ erred in failing "to pose relevant hypotheticals to the VE" and to consider whether Plaintiff's "financial status constituted a justifiable excuse for failing to obtain or follow treatment" are threadbare allegations devoid of any legal authority. *See* Pl. Br. 4–5. As a result, Plaintiff's argument with respect to these issues is without merit. *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10thCir. 2004) ("The scope of our review . . . is limited to the issues the [plaintiff] . . . adequately presents on appeal.") (internal quotation marks omitted).

Plaintiff also asserts his "subjective testimony should be given more weight because he performed his job for the last 15 years and only quit because of back pain." Opening Br. 10.  Work history is a relevant factor the ALJ should consider in evaluating the Plaintiff's alleged symptoms. *See* 20 C.F.R. § 404.1529(c)(3).   The Tenth Circuit "does not, however, require a formalistic factor-by-factor recitation of the evidence" when the ALJ is determining the credibility of the Plaintiff's assertions.  *See Smith v. Colvin*, 625 F. App'x 896, 900 (10th Cir. 2015) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).  Because the ALJ set forth the specific substantial evidence he relied on in evaluating the credibility of Plaintiff's asserted symptoms, this Court will not upset the ALJ's determination.

---

[2]*Cf. O'Dell v. Shalala,* 44 F.3d 855, 859 (10th Cir. 1994) (reasoning that "because the Secretary's decision does not become final until after the Appeals Council denies review or issues its own findings, her 'final decision' necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence.").

Thus, the Court finds the ALJ did not fail to conduct a proper pain analysis and the ALJ's credibility determination is supported by substantial evidence.

## III. Whether the ALJ Erred in Rejecting a Treating Physician's Opinion and Failing to Properly Weigh the Medical Opinions

Plaintiff argues that the ALJ failed to properly consider the opinions of examining physician, Dr. Mars, the consulting physician, Dr. Terry, and his "treating physician." The Court finds that the decision must be remanded for the ALJ's failure to apply the proper legal standards in analyzing the evidence.

According to the "treating physician rule," the Commissioner will generally "give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2). In fact, "[a] treating physician's opinion must be given substantial weight unless good cause is shown to disregard it." *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1995). A treating physician's opinion is accorded this weight because of the unique perspective the doctor has to medical evidence that cannot be obtained from an objective medical finding alone or from reports of individual examinations. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

When assessing how much weight to give a treating source opinion, the ALJ must complete a two-step inquiry, each step of which is analytically distinct. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The ALJ must first determine whether the opinion is conclusive – that is, whether it is to be accorded "controlling weight" on the matter to which it relates. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *accord Krauser*, 638 F.3d at 1330. If the opinion

is not supported by medically acceptable evidence, then the inquiry at this stage is complete. *Watkins*, 350 F.3d at 1300.  However, if the ALJ "finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record ." *Id.*  If not, the opinion is not entitled to controlling weight. *Id.*  In contrast, if the medical opinion of a treating physician is well supported by medically acceptable evidence and is not inconsistent with the other substantial evidence in the record, an ALJ must give it controlling weight. *Sedlak v. Colvin*, No. 11-cv-01247-PAB, 2014 WL 717914, at *10 (D. Colo. Feb. 24, 2014) (citing 20 C.F.R. § 416.927(c)(2)).

If the opinion of a treating physician does not merit controlling weight or if there is no opinion by a treating physician, the ALJ must move to step two and consider the following factors in determining how to evaluate other medical opinions in the record: length of the treating relationship, frequency of examination, nature and extent of the treating relationship, evidentiary support, consistency with the record, medical specialization, and other relevant considerations. *Id.*  "An ALJ may dismiss or discount an opinion from a medical source only if his decision to do so is 'based on an evaluation of all of the factors set out in the cited regulations' and if he provides 'specific, legitimate reasons' for [the] rejection." *Id.* (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)).

First, the Court agrees with Defendant that the ALJ did not reject a treating physician's opinion. Plaintiff asserts in his "assignments of error" that the "ALJ erred to accord 'controlling weight' to the opinion of the treating physician" and "erred in rejecting the treating physician's opinion without making appropriate findings." Opening Br. 5.  A fundamental flaw in Plaintiff's argument is that he fails to identify a treating source opinion in the record, which would deserve

controlling or substantial weight, that the ALJ rejected.

Plaintiff's only reference to a treating source opinion in the record is when he presented to P.A. Manto on August 12, 2014. Reply 3. At this visit, Plaintiff reported to P.A. Manto that he had "some lower back and mid back pain for the past 6 months" [AR 270] Based on an MRI showing degenerative disc disease and Plaintiff's report of back pain, P.A. Manto referred Plaintiff to an orthopedist. [AR 270] P.A. Manto, however, did not opine that Plaintiff's spinal degeneration, or any of his alleged disabling medical complaints, limited his physical functioning. *Cf. Anderson v. Barnhart*, 312 F. Supp. 2d 1187, 1194 (E.D. Mo. 2004) (a treating physician's opinion that the "plaintiff would probably have intermittent and recurrent symptoms and direct[ion] that plaintiff could be up as tolerated" constituted a "medical opinion" to which the ALJ was required to assign weight); *Boland v. Astrue*, No. 2011 WL 5507377, at *12 (N.D. Ill. Nov. 10, 2011) (the ALJ's failure to address physician's opinion that claimant "could work and perform activity as tolerated" required remand). Further, Plaintiff himself recognizes that notwithstanding the medical opinions of Dr. Mars and Dr. Terry, "there [are] no other treating source opinions as to the [Plaintiff's] lifting restrictions." Reply 2. Thus, the Court finds the ALJ did not reject a treating physician's opinion.

Second, the Court agrees with Plaintiff that the ALJ erred in discounting Dr. Mars' opinion regarding Plaintiff's lifting restrictions, without a substantial basis. Plaintiff argues that the ALJ erred in giving more weight to the state agency physician who never examined or treated him than the ALJ gave to the presumptively stronger opinion from the examining physician. In other words, Plaintiff contends that the ALJ did not have valid reasons for discounting the opinion of Dr. Mars that Plaintiff could lift only forty pounds occasionally and thirty pounds frequently, and for enhancing the weight

of the opinion of the reviewing physician, Dr. Terry, that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently. Dr. Terry's opinion supports the ALJ's finding that Plaintiff can perform the full range of "medium" work,[3] while Dr. Mars' opinion does not.

Defendant counters that the "ALJ grave great weight to these opinions, but explained why he was not adopting any of their postural, manipulative, or environmental limitations and was instead finding that Plaintiff could perform the full range of medium work." Resp. 15. Defendant asserts that, in doing so, the ALJ relied on the same evidence he used in determining Plaintiff's subjective complaints did not support additional functioning limitations. Resp. 16.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin*, 365 F.3d at 1215 (citing 20 C.F.R. § 401.1527(d)). The applicable regulations governing the SSA's consideration of medical opinions distinguish among "treating" physicians, "examining" physicians, and "nonexamining" (or "consulting") physicians. *See* 20 C.F.R. § 416.927(c). "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson*, 366 F.3d at 1084.

The ALJ must "give consideration to all the medical opinions in the record" and "discuss the weight he assigns to them." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotation marks omitted). And the ALJ must give "good reasons" for the weight he ultimately assigns each

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

medical opinion. *Watkins*, 350 F.3d at 1301. The ALJ's decision must be sufficiently specific to make clear to any subsequent reviewer the weight given to the medical opinion, and the reason for that weight. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Even though an ALJ is not required to discuss every piece of evidence, it must be clear that the ALJ considered all of the evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. Further, an express analysis of a medical opinion the ALJ relies on is necessary to avoid prejudice where there is "inconsistency between the opinion and the ALJ's assessment of residual functional capacity." *See Mays*, 739 F.3d at 578–79.

Here, the ALJ accorded "great weight" to Dr. Mars' opinion; however, the Court finds that the ALJ impliedly discounted Dr. Mars' finding that Plaintiff could lift only forty pounds occasionally and thirty pounds frequently without explaining his basis for doing so. Regarding the medical opinion of Dr. Mars, the ALJ concluded:

> As indicated, a consultative/physical exmaination was conducted in July 2014, and the findings and opinion of this exmainder essentially supports a capacity for medium level work (Exhibit 5). The restrictions given were based on the claimant's history of out and arthritis, with some mild degeneration observed on x-rays of the claimant's knees at the time. Though the undersigned acknowledges that the claimant has since suffered injuries to his left upper extremity, as disucssed above these injuries have not required significant medical treatment and indeed the claimant has not received any treatment for these compliants since January 2015, about five months after his injury. Though his upper extremity impairments are considered severe, they are not found to cause any greater restrictions on lifting or carrying than found in this decision. There is also no support for any appreciable postural or manipulative limitations.

[AR 30] The ALJ explains why Plaintiff's upper extremity injuries are not grounds for finding

greater restrictions on lifting or carrying than found in the medical opinion. [AR 30] But the ALJ fails to address Dr. Mars' determination that Plaintiff's osteoarthritis restricted his lifting ability to forty pounds occasionally and thirty pounds frequently, which conflicts with the ALJ's conclusion that Plaintiff has the RFC to perform the full range of *medium* work. [AR 30, 266]

Because there is "inconsistency between the opinion and the ALJ's assessment of the [RFC]," the ALJ must explain his reason for discounting Dr. Mars' opinion. *See Mays*, 739 F.3d at 578–79. Although the ALJ is entitled to resolve evidentiary conflicts, *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016), without more from the ALJ, it is unclear that he considered all the evidence. *See Clifton*, 79 F.3d at 1009–10. As vaguely stated, the ALJ's opinion appears to be an improper substitution of the ALJ's judgment for that of Dr. Mars. *See Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996). Therefore, the Court finds that the ALJ erred in failing to address the inconsistency between Dr. Mars's opinion and his RFC determination.

## **CONCLUSION**

In sum, the Court concludes that, while the ALJ did not (1) fail to develop the record, (2) make improper credibility determinations, or (3) reject a treating physician opinion, he failed to address the inconsistency between Dr. Mars' opinion and his RFC determination and did not provide a basis for discounting Dr. Mars' opinion concerning Plaintiff's lifting restrictions. Therefore, the decision of the ALJ that Plaintiff Mark Lester Boyd was not disabled since August 8, 2013 is REVERSED AND REMANDED to the Commissioner for further consideration in accordance with this order.

Dated at Denver, Colorado this 30th day of October, 2017.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge